UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ANDREW J.J. WOLF, JIMMY T. GLASS, PATRICK K. KNIGHT, DWAYNE N. BANKS, and RONALD D. LEWIS,<br><br>Plaintiffs,<br><br>v.<br><br>BRENT REINKE; TONY MEATTE; SHANNON CLUNEY; DIANE BAUNE; ZARA MARTIN; RONA SIEGERT; CORRECTIONS CORPORATION OF AMERICA; JOHN FERGUSON; LUCIBETH MAYBERRY; STEVEN CONRY; CHARLES MARTIN; PHILLIP VALDEZ; DANIEL PRADO; JOEL V. YOUNG; TOM KESSLER; GABRIEL HALE; FREDERICK PERRY; SHANE JEPSEN; DANIEL MELODY; BRYAN JOHNSON; NORMA RODRIGUEZ; KLINT M. STANDER; JOSEPH P. CORDONA; NANCEY BAERLOCHER; CHESTER PENN; COMPASS GROUND USA, INC., a Delaware Corporation; CANTEEN CORRECTIONAL SERVICES; LU VISI; JUDY RICHARDSON;<br><br>Defendants. | Case No. 1:09-CV-632-EJL<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court in this prisoner civil rights action are various motions filed by the parties that are ripe for adjudication. Having reviewed the arguments of the parties, as well as the record in this case, the Court enters the following Order.

## BACKGROUND

Plaintiffs Andrew J.J. Wolf, Jimmy T. Glass, Patrick K. Knight, Dwayne N. Banks, and Ronald D. Lewis (Plaintiffs) were permitted to proceed only on the following

**MEMORANDUM DECISION AND ORDER - 1**

claims in the First Amended Complaint: the second cause of action (inadequate ventilation), the third cause of action (inadequate plumbing), the fourth cause of action (inadequate living space), the fifth cause of action (inadequate dayroom space), the sixth cause of action (inadequate staffing), and the eighth cause of action (inadequate recreation). Plaintiffs were permitted to proceed only against the following Defendants: Brent Reinke, John Doe (current warden of Idaho Correctional Center), Daniel Melody, Frederick Perry, and Shane Jepsen. (See Order of September 30, 2010, Dkt. 19.)

## REVIEW OF PENDING MOTIONS

1. **Patrick Knight's Motion for Voluntary Dismissal (Dkt. 21) and Andrew Wolf's Motion to Take Judicial Notice (Dkt. 23)**

Patrick Knight requests that the Court voluntarily dismiss his claims and that he not be assessed part of the filing fee. Good cause appearing, the Court will grant the motion and dismiss Mr. Knight's claims without prejudice. The Court will not assess Mr. Knight a portion of the filing fee because a fee order has not yet been issued, but will divide the fee among the remaining Plaintiffs who wish to continue.

Plaintiff Andrew Wolf requests that the Court take judicial notice of the fact that the remaining Plaintiffs intend to continue the action. Mr. Wolf's motion will be granted to the extent that it acknowledges that Mr. Knight wishes to withdraw and not pay a portion of the filing and the remainder of the Plaintiffs wish to proceed and pay the filing fee among themselves ($87.50 each).

2. **Plaintiffs' Motion for Extension of Time to File Supplemental First Amendment Complaint (Dkt. 26); Plaintiffs' Motion to Reconsider Order (Dkt. 31); and Defendants' Motion to Strike Plaintiffs' Reply to Response to Motion to Amend/Correct Complaint (Dkt. 58)**

As to Plaintiffs' claims for declaratory and injunctive relief, the Court previously ordered Plaintiffs to substitute the name of the current warden for the former warden by

filing a "Supplement to the First Amended Complaint" within thirty (30) days. (Dkt. 19.) Plaintiffs allege that the restrictions imposed upon inmates caused them to be unable to file a supplement in time (they wished to file a motion to reconsider and a request to file a second amended complaint rather than simply add the name of the new warden). Good cause appearing, the Court will grant the requested extension of time. Because Plaintiffs are proceeding pro se, the Court will not strike their reply and affidavit, but has considered them as additional argument.

Plaintiffs request that the Court reconsider its previous Order limiting their causes of action and defendants. First, Plaintiffs seek additional clarification on whether they can proceed on their supplemental state-law causes of action. Plaintiffs may proceed on only those state-law claims that correspond to the federal claims upon which they have been permitted to proceed, to the extent that such state-law claims are set forth in the complaint and permitted by state law. The Court generally leaves it up to Defendants to set forth their defenses against any state-law causes of action, rather than reviewing them in detail in the Initial Review Order.

The Court will not permit Plaintiffs to proceed on any of the policy-based claims at this time because Plaintiffs have failed to provide any factual allegations showing that adding extra beds or initiating a lock-down policy was motivated by, or implemented for, an underlying purpose of violating inmates' civil rights. In *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009), the Court dismissed a policy-based claim for failure to state plausible facts suggesting that the named Defendants "purposely adopted a policy of classifying post-September-11 detainees as 'of high interest' because of their race, religion, or national origin." *Id*. at 1952. The Court reasoned: "All [the complaint] plausibly suggests is that the Nation's top law enforcement officers, in the aftermath of a devastating terrorist

**MEMORANDUM DECISION AND ORDER - 3**

attack, sought to keep suspected terrorists in the most secure conditions available until the suspects could be cleared of terrorist activity." *Id*.

In particular, the *Iqbal* Court held that the following allegations were insufficient to state a policy-based claim:

> Respondent pleads that petitioners "knew of, condoned, and willfully and maliciously agreed to subject [him]" to harsh conditions of confinement "as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest."The complaint alleges that Ashcroft was the "principal architect" of this invidious policy, and that Mueller was "instrumental" in adopting and executing it. These bare assertions, much like the pleading of conspiracy in *Twombly*, amount to nothing more than a "formulaic recitation of the elements" of a constitutional discrimination claim, 550 U.S. at 555, 127 S.Ct. 1955, namely, that petitioners adopted a policy "'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Feeney*, 442 U.S. at 279, 99 S.Ct. 2282.

*Id*. at 1951 (internal record citations omitted).

While Plaintiffs cannot proceed at this time, they may request amendment at the end of the discovery period by filing a motion to amend and a proposed amended complaint if they have obtained sufficient facts to support such an allegation.

The Court will substitute Tim Wengler, the new warden of ICC, for former Warden Valdez, because the inmates seek declaratory and injunctive relief only against the Warden of ICC, without the need of a second amended complaint. Plaintiffs have not made an adequate argument showing why the second amended complaint is necessary. The Court will not permit Plaintiffs to proceed on additional causes of action against additional Defendants at this time, and the proposed new plaintiff, Kenneth Workman, has now indicated he is not interested in pursuing his claims.

3.  **Defendants' Motion to Dismiss for Failure to Exhaust Administrative Remedies (Dkt. 32); Plaintiffs' Motion for Extension of Time to Respond to Motion to Dismiss (Dkt. 38); and Plaintiffs' Motion to Supplement Response to Motion to Dismiss (Dkt. 53)**

    A.  **Standard of Law**

Pursuant to the Prison Litigation Reform Act of 1995 (PLRA),[1] a prisoner is required to exhaust all administrative remedies within the prison system before he can bring a civil rights lawsuit challenging the conditions of his confinement. 42 U.S.C. § 1997e(a). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007).

The *Jones v. Bock* Court noted the important policy concern behind requiring exhaustion is that it "allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Id*. at 204. In addition, the *Jones v. Bock* Court cited with approval the observation that "the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance is not a summons and complaint that initiates adversarial litigation." *Id*. at 219 (internal citation omitted).

Where there is an "informal[]" and "relative[ly] simpl[e]" prison grievance system, prisoners must take advantage of it before filing a civil rights complaint. *Woodford v. Ngo*, 548 U.S. 81, 103 (2006). "Proper" exhaustion of administrative remedies is required, meaning that "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Id*. at 85. Proper exhaustion is "defined not by the PLRA, but by the prison grievance system itself." *Jones v. Bock*, 549 U.S. at 218. Therefore, the

---

[1] 110 Stat. 1321-71, *as amended*, 42 U.S.C. § 1997e, *et seq*.

"level of detail necessary in a grievance to comply with the grievance procedures" will be defined by the prison's own grievance policy. *Id*.

In *Rhodes v. Robinson*, 621 F.3d 1002 (9th Cir. 2010), the United States Court of Appeals for the Ninth Circuit clarified that if a plaintiff wishes to add new claims to an existing lawsuit by raising them in an amended or supplemental complaint, the district court is to look to the timing of the submission of the claims to determine whether the newly-added claims were timely exhausted. The *Rhodes* Court held that "a prisoner must exhaust his administrative remedies for the claims contained within his complaint before that complaint is tendered to the district court." *Id*. at 1005. Particularly, the Court agreed that inmate Rhodes correctly argued that "the new claims in his second amended complaint should not have been dismissed, because they were properly exhausted *before* he tendered his second amended complaint to the district court for filing." *Id*. (emphasis in original).[2]

*Rhodes* does not overrule United State Supreme Court precedent requiring exhaustion before a claim is brought in federal court. Rather, construed together, these cases dictate that, if a claim was included in the original complaint before the claim was exhausted, the claim cannot be exhausted during the pendency of the lawsuit and pursued in an amended complaint, but, rather, such claims must be dismissed without prejudice. To permit *Rhodes* to override § 1997e(a)'s exhaustion-first rule would contradict the letter and spirit of *Woodford v. Ngo*, 548 U.S. 81, 103 (2006), which held that "proper"

---

[2] In *Rhodes*, the inmate asked for authorization to file a second amended complaint to add new claims that arose after the original complaint was filed. This Court does not read *Rhodes* so narrowly as to require that claims must have *arisen* after the filing date of the original complaint to be eligible for later amendment. *See id.*, 621 F.3d at 1006-07. Rather, the Court will consider permitting amendment so long as the claim was exhausted at the time it was *first presented* to the Court in a pleading for inclusion in the case, regardless of whether it arose before or after the filing date of the original Complaint.

**MEMORANDUM DECISION AND ORDER - 6**

exhaustion of administrative remedies under § 1997e(a) means that "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a *precondition* to bringing suit in federal court." *Id*. at 85 (emphasis added). Such a rule would also encourage inmates to disregard the exhaustion-first rule, resulting in the thwarting of the purpose of administrative exhaustion–to resolve problems *without* filing suit.

Failure to exhaust administrative remedies is an affirmative defense that should be brought as an unenumerated 12(b) motion. *Wyatt v. Terhune*, 315 F.3d 1108 (9th Cir. 2003). In deciding a motion to dismiss for failure to exhaust administrative remedies, a court may look beyond the pleadings and decide disputed issues of fact. *Id.* at 1119-20. Defendants bear the burden of proving failure to exhaust. *Brown v. Valoff*, 422 F.3d 926 (9th Cir. 2005). The United States Court of Appeals for the Ninth Circuit has instructed that "pro se claims are construed liberally for purposes of the exhaustion requirement." *Vizcarra-Ayala v. Mukasey*, 514 F.3d 870, 873 (9th Cir. 2008) (immigration context) (relying on *Agyeman v. INS*, 296 F.3d 871, 878 (9th Cir. 2002) and *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

B.  **IDOC Grievance Policy**

A prisoner held in custody of the Idaho Department of Correction (IDOC) must attempt to resolve any "problem or action" related to his incarceration using the prison's internal grievance system. (Exhibit C to Affidavit of Chance Leeds, Standard Operating Procedure Control Number 316.02.01.001, Docket No. 32-2.) IDOC has a relatively straightforward three-step system, which requires the prisoner to submit an informal concern form describing the problem, file a formal grievance, and submit an appeal of any adverse decision. (Leeds Aff., ¶ 8.)

**MEMORANDUM DECISION AND ORDER - 7**

The prisoner begins this process by routing the concern form to the staff member most capable of addressing the problem. (*Id*. at ¶ 11.) If the issue is not resolved, the prisoner must complete a grievance form, attach a copy of the concern form, and file the grievance within 30 days of the incident. (*Id*. at ¶ 12.) The "grievance coordinator" at the prison will route a properly-completed grievance to the appropriate staff member, who must respond within 10 days. (*Id*. at ¶13.)

After the staff member responds, the coordinator forwards the grievance to the "reviewing authority," who, after reviewing the prisoner's complaint and the staff member's response, issues a decision. (*Id*.) If the prisoner is dissatisfied with the reviewing authority's decision, he may then appeal within 5 days to the "appellate authority." (*Id*. at ¶ 14.) The appellate authority has 14 days to issue a final decision, whereupon the grievance is routed back to the inmate, thus concluding the administrative review process. (*Id*. at ¶15.)

### C. Discussion of Claims

#### (1) *Patrick Knight's Claims*

Defendants seek to dismiss all of Mr. Knight's claims for failure to exhaust. Because Mr. Knight seeks to voluntarily dismiss his claims, this portion of Defendants' motion is moot.

#### (2) *Ronald Lewis's Claims*

Defendants seek to dismiss all of Mr. Lewis's claims for failure to exhaust his administrative remedies on any claim. Chance Leeds, ICC's Grievance Coordinator, has filed an Affidavit stating that he has reviewed ICC's grievance database, and he has found no grievance of Mr. Lewis in the database that was exhausted prior to the filing of the First Amended Complaint. (Leeds Aff. ¶ 22.)

**MEMORANDUM DECISION AND ORDER - 8**

Mr. Lewis filed and exhausted grievances about inadequate plumbing and cubical and dayroom space on August 2, 2010, after the date the claims were included and filed in the Complaint (December 7, 2009) and included in the First Amended Complaint (March 1, 2010). (Leeds Aff. ¶ 22 & Exhibit G.) The Court will not apply *Rhodes* to any claim that was not properly exhausted before a Plaintiff first sought to include it in this case. Because Mr. Lewis brought his claims in this lawsuit before he exhausted his administrative remedies, the claims will be dismissed without prejudice.

### (3) *Andrew Wolf's Claims*

The grievance database shows that Mr. Wolf did not file a grievance on the issue of inadequate plumbing or inadequate recreation. (Leeds Aff, ¶ 19.) A grievance on inadequate staffing was not exhausted until after the First Amended Complaint was filed. Following the reasoning set forth above, Mr. Wolf's claims of inadequate plumbing, recreation, and staffing will be dismissed without prejudice.

Mr. Wolf has one new claim addressed in an Inmate Concern Form he submitted on or about June 9, 2010, regarding bugs coming out of the ventilation system. The Court agrees with Mr. Wolf that this claim should be deemed exhausted. Prison staff responded to Mr. Wolf that bugs were coming out of the *drainage* system, the system had been sprayed, and the problem resolved. Thereafter, IDOC employee Chester Penn refused to process an Inmate Concern Form and told Plaintiff not to complain about the bugs again, even though Mr. Wolf complained that the bugs were still dropping from the *ventilation* system after the spraying.

The Court finds and concludes that Mr. Wolf has made a sufficient effort to exhaust his administrative remedies, but the prison would not process the grievance. *See Sapp v. Kimbrell*, 623 F.3d 813, 828 (9th Cir. 2010) ("[A]dministrative remedies are

**MEMORANDUM DECISION AND ORDER - 9**

'effectively unavailable'–and . . . the PLRA's exhaustion requirement is therefore excused–where prison officials improperly screen a prisoner's grievance or grievances that would have sufficed to exhaust the claim that the prisoner seeks to pursue in federal court.").

Mr. Wolf's new claim was not included in the Complaint or First Amended Complaint. As a result, this claim is exhausted. However, Mr. Wolf has been transferred from ICC and no longer appears to have an interest in declaratory or injunctive relief at that facility, and, therefore, his claim may be moot. However, the Court is awaiting Mr. Wolf's response to the pending Motion to Dismiss Andrew Wolf as Plaintiff. (Dkt. 66.)

### (4) *Jimmy Glass's Claims*

Mr. Glass did not file a grievance on inadequate plumbing or inadequate staffing. (Leeds Aff, ¶ 20.) While Mr. Glass filed a grievance on inadequate recreation, he did not appeal it; therefore, it is not properly exhausted. (*Id*.) Therefore, Mr. Glass's claims of inadequate plumbing, staffing, and recreation will be dismissed without prejudice.

### (5) *Dwayne Banks's Claims*

Mr. Banks did not file a grievance on inadequate staffing or inadequate recreation. (Leeds Aff. ¶ 21.) Therefore, Mr. Banks's claims of inadequate staffing and recreation will be dismissed without prejudice.

### D. Conclusion

No claims of Mr. Knight remain at issue as a result of his voluntary dismissal of all of his claims. No party properly exhausted a claim of inadequate recreation or inadequate staffing before the first time the claim was brought in this action, and therefore those claims will be dismissed without prejudice.

Mr. Lewis did not properly exhaust any claim he brings in this lawsuit. As a result,

all of Mr. Lewis's claims will be dismissed without prejudice.

Plaintiffs Wolf and Banks properly exhausted their claims of inadequate ventilation before they first brought those claims in this action, and may proceed on those claims, but Plaintiff Wolf's claims appear moot due to his transfer. Plaintiff Wolf, Banks, and Glass properly exhausted their claims of inadequate cubicle and dayroom space before they first brought those claims in this action, and they may proceed on those claims, with the exception of Mr. Wolf, whose claims now appear moot. Plaintiff Banks exhausted his claim of inadequate plumbing before he first brought that claim in this action, and he may proceed on that claim.

All claims that were not properly exhausted before they were first brought in this case will be dismissed without prejudice.

4. **Plaintiffs' Motion Amend Complaint for Classwide Declaratory and Injunctive Relief (Dkt. 44); Plaintiffs' Motion to Certify Class (Dkt. 45); Plaintiffs' Motion to Appoint Counsel (Dkt. 46); Defendants' Motion to Stay Class Certification Motion (Dkt. 52); Defendants' Motion to Dismiss Plaintiff Andrew Wolf from Action for Lack of Standing to Represent Putative Class (Dkt. 66)**

The trial court has broad decision whether to certify a case as a class action. *Kamm v. California City Development Co.*, 509 F.2d 205, 210 (9th Cir. 1975). The Court has reviewed the class certification issue, and has determined that class certification is not necessary in this case at this time, based on the factors set forth in Federal Rule of Civil Procedure 23(b).

The extent and nature of this litigation weighs against class certification. *See* Fed. R. Civ. P. 23(b)(3)(B). This case is at a very early stage of litigation, the standards of law are very high and difficult to meet, and it is unclear whether the factual allegations are meritorious. Managing an inmate class action is an inherently difficult task, which the

Court finds is not currently warranted given the uncertainty of the merits of the case. *See* Fed. R. Civ. P. 23(b)(3)(D).

To date, six inmates have been involved in this action. As it now stands, one-third of those inmates (two) no longer wish to pursue the action. In addition, one inmate has been transferred, and his claims appear moot. The lack of interest shown to date by one-third of the Plaintiffs weighs in favor of permitting only those inmates who are truly interested in the litigation to pursue it in their own names.

The Court finds that a class action is not superior to other available methods for fairly and efficiently adjudicating the controversy. *See* Fed. R. Civ. P. 23(b)(3). The remaining three Plaintiffs seek declaratory and injunctive relief which, if granted, would benefit the potential class members without the necessity of a class action. Many courts have held that, where a suit attacks the constitutionality of a policy, or practice by a state actor, there is generally little need for the suit to proceed as a class action, since it can be assumed that, if the court declares the policy or practice unconstitutional, then the responsible government officials will discontinue enforcement of it. *See Lent v.* Lopes, 107 F.R.D. 62 (D. Conn. 1985); *Chacon v. Zahorka*, 663 F.Supp. 90 (D. Colo. 1987); *Griffin v. Smith*, 493 F.Supp. 129 (W.D. N.Y. 1980); *Inmates, Washington County Jail v. England*, 516 F.Supp. 132 (E.D. Tenn. 1980), *aff'd*, 659 F.2d 1081 (6th Cir. 1981).

For all of the foregoing reasons, Plaintiffs' Motion Amend Complaint for Classwide Declaratory and Injunctive Relief (Dkt. 44) will be denied; Plaintiffs' Motion to Certify Class (Dkt. 45) will be denied; and Defendants' Motion to Stay Class Certification Motion (Dkt. 52) will be denied.

The Court is awaiting a response and reply before deciding Defendants' Motion to Dismiss Plaintiff Andrew Wolf from Action for Lack of Standing to Represent Putative

Class (Dkt. 66). The parties should address whether Plaintiff Wolf's claims are moot, given that he has requested declaratory and injunctive relief only and no longer resides at ICC.

5.     **Plaintiffs' Motion to Appoint Counsel (Dkt. 46)**

Unlike criminal defendants, prisoners and indigents in civil actions have no constitutional right to counsel unless their physical liberty is at stake. *Lassiter v. Dept. of Social Services*, 452 U.S. 18, 25 (1981). Whether a court appoints counsel for indigent litigants is within the court's discretion. *Wilborn v. Escalderon*, 789 F.2d 1328, 1330-31 (9th Cir. 1986); *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991).

To date, Plaintiffs have articulated their claims sufficiently, and they are at no substantial disadvantage compared to other inmates because they have no legal training or few legal resources. Plaintiffs' primary task in this case is to bring forward the *facts* supporting the claims; it is not necessary to provide legal argument or citations. Defendants have been ordered to voluntarily produce to Plaintiffs all relevant information and documents to which they have access. Plaintiffs may draft simple interrogatories or requests for production to be mailed directly to Defendants' counsel for a response from Defendants if they believe they need further information from Defendants to meet the elements of their case.

The Court will presently deny the motion for appointment of counsel without prejudice, but it will consider appointment at a later date if the case appears meritorious after the Court has had an opportunity to review Defendants' defenses and the parties' evidence concerning the facts of the case.

6.    **Plaintiffs' Motion for Hearing and Order of Transport (Dkt. 61)**

The Court has considered the pending motions, and none requires oral argument.

**MEMORANDUM DECISION AND ORDER - 13**

As a result, Plaintiffs' Motion for a Hearing and Order of Transport will be denied.

**7.   Intervenor Kenneth Workman's Application to Proceed in Forma Pauperis (Dkt. 47) and Motion for Voluntary Dismissal from Case (Dkt. 60)**

Inmate Kenneth Workman sought to enter this case as a plaintiff, and then changed his mind. Good cause appearing, the Court will permit him to withdraw his Application to Proceed in Forma Pauperis, and he will not be added as a plaintiff to this case.

**8.   Plaintiff Wolf's Motion for Order Permitting Plaintiff Andrew Wolf to Communicate with Co-Plaintiffs (Dkt. 64)**

Plaintiff Andrew Wolf has been transferred to a different facility. Plaintiff has requested, and Defendants have no objection, to the inmates following the procedures set forth in Mr. Wolf's motion to communicate with one another. In addition, all inmate-to-inmate communications must be in compliance with current IDOC and ICC rules and regulations. Therefore, the Motion will be granted; however, if Mr. Wolf is dismissed from this case, then he will no longer have the need to communicate with the other Plaintiffs as a party to this action.

## ORDER

**IT IS ORDERED:**

1. Patrick Knight's Motion for Voluntary Dismissal (Dkt. 21) is GRANTED.

2. Andrew Wolf's Motion to Take Judicial Notice (Dkt. 23) is GRANTED to the extent set forth herein above. Each remaining Plaintiff will be assessed $87.50 for the filing fee in this case. This Order supersedes the prior Order (Dkt. 19, issued September 30, 2010), regarding the filing fee assessments in this case.

3. Plaintiffs' Motion for Extension of Time to File Supplemental First Amended Complaint (Dkt. 26) is GRANTED, to the extent that the Court has considered the request to file a supplemental first amended complaint; it is DENIED to the extent

**MEMORANDUM DECISION AND ORDER - 14**

that the Court concludes that further supplementation or amendment at this time is unnecessary.

4. Plaintiffs' Motion to Reconsider Order (Dkt. 31) is DENIED.

5. Defendants' Motion to Strike Plaintiffs' Reply to Response to Motion to Amend/Correct Complaint (Dkt. 58) is DENIED. The Court has considered all of Plaintiffs' arguments.

6. Defendants' Motion to Dismiss for Failure to Exhaust Administrative Remedies (Dkt. 32) is GRANTED in part, and DENIED in part, as follows: All of Plaintiff Lewis's claims are dismissed without prejudice; all of the inadequate recreation claims and inadequate staffing claims are dismissed without prejudice; the claims of each Plaintiff that were not properly exhausted before the time they were first brought as a claim in this litigation are dismissed without prejudice, as more particularly set forth in Section C of this Order.

7. Plaintiffs' Motion for Extension of Time to Respond to Motion to Dismiss (Dkt. 38) is GRANTED. The response filed at Dkt. 43 is considered timely.

8. Plaintiffs' Motion to Supplement Response to Motion to Dismiss (Dkt. 53) is GRANTED to the extent that the Court has considered all of Plaintiffs' filings in deciding the pending motions.

9. Plaintiffs' Motion Amend Complaint for Classwide Declaratory and Injunctive Relief (Dkt. 44) is DENIED.

10. Plaintiffs' Motion to Certify Class (Dkt. 45) is DENIED.

11. Plaintiffs' Motion to Appoint Counsel (Dkt. 46) is DENIED without prejudice.

12. Defendants' Motion to Stay Class Certification Motion (Dkt. 52) is DENIED.

13. Plaintiffs' Motion for Hearing and Order of Transport (Dkt. 61) is DENIED.

**MEMORANDUM DECISION AND ORDER - 15**

15. Intervenor Kenneth Workman's Application to Proceed in Forma Pauperis (Dkt. 47) is DENIED as MOOT, and his Motion for Voluntary Dismissal from Case (Dkt. 60) is GRANTED.

16. Plaintiff Wolf's Motion for Order Permitting Plaintiff Andrew Wolf to Communicate with Co-Plaintiffs (Dkt. 64) is GRANTED only to the extent (a) as set forth in the procedures specified in the Motion; (b) that the procedures do not conflict with any current IDOC or ICC rules or regulations; and (c) that Wolf remains a party to this action.

DATED: **May 18, 2011**

Honorable Edward J. Lodge
U. S. District Judge